UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

OSCAR FERRERA,

        Plaintiff,

   -v-                                   No. 06  Civ. 1158 (LTS)(GWG)

BRIAN FISHER, et al.,

        Defendants.

-------------------------------------------------------x

**OPINION AND ORDER**

APPEARANCES:

| | |
|---|---|
| OSCAR FERRERA,<br>02-A-0103<br>Attica Correctional Facility<br>Box 149<br>Attica, NY 14011 | ANDREW M. CUOMO,<br>Attorney General of the State of New York<br>120 Broadway - 24th Floor<br>New York, NY 10271<br>  By: Steven N. Schulman, Assistance<br>Attorney General |
| *Plaintiff Pro Se* | *Attorney for Defendants* |

LAURA TAYLOR SWAIN, U.S.D.J.

Incarcerated Pro Se Plaintiff Oscar Ferrera ("Plaintiff" or "Ferrera") brings this

Section 1983 action, alleging that Defendants have violated his Eighth Amendment right to be free

from cruel and unusual punishment by being grossly negligent or deliberately indifferent with

respect to his serious medical needs and by using excessive force.[1]  Plaintiff requests compensatory

---

[1] Plaintiff lists twenty-one individuals and entities as defendants in his Amended Complaint ("Am. Compl."): Brian Fischer (identified as "Fisher" in the Am. Compl.); Dr. John Perilli (identified as "Perelly" in the Am. Compl.); Dr. Kyeetint Maw; former Superintendent George Duncan; Dr. Albert Paolano; Superintendent Robert Ercole; Dr. Federick Bernstein; Dr. Hari Chakravorty; Nurse Eileen Hernandez-Valdez (identified as "Valdez-Hernandez" in Am. Compl.); Nurse Joan Tardio; Corrections Officer ("C.O.") Wayne Corkery; C.O. John Havens; C.O. Michael Funk; and Jean Hendrickson (identified as "Dr. Hendexixsior" in Am. Compl.), are all, except Hendrickson, current or former employees of non-party New York State Department of Correctional Services ("DOC").  Defendants Nurse Denise, Dr. Morlas, Dr. Nunez, Dr. Patebl and former Superintendent William Phillips do not appear to have been served.  Defendants request that the case be dismissed as against those parties pursuant to Federal Rule of Civil Procedure 4(m). Plaintiff has not come forward with any evidence that these individuals have been served.  The Amended Complaint is therefore dismissed as against defendants Denise, Morlas, Nunez, Patebl and Phillips, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).  Plaintiff also listed the "Mental Staff Sing Sing" and the "Mentasl [sic] Staff: Great Meadow" as defendants in the Complaint, but these are not entities that can be sued.  Judge Mukasey, in his February 15, 2006, Order requiring Plaintiff to file an amended complaint, instructed Plaintiff on the way in which he could add unidentified individuals to his Amended Complaint.  (Schulman Decl. Ex. A, p. 3, n. 2 (Judge Mukasey's February 15, 2006, Order).)  Plaintiff failed to use this John Doe or Jane Doe approach to specify unidentified staff members in the Sing Sing or Great Meadow mental health departments.  (See Am. Compl.) Thus, Plaintiff's claims are dismissed without prejudice to the extent that he intended to bring those claims against anyone other than the Medical and C.O. Defendants identified in the following paragraph.

The Court refers to Defendants Fischer, Perilli, and Maw as the "Sing Sing Medical Defendants," refers to Defendants Duncan and Paolano as the "Great Meadow Medical Defendants" and refers to Defendants Ercole, Bernstein, Chakravorty, Hernandez-Valdez, Tardio and Hendrickson as the "Green Haven Medical Defendants."  The Sing Sing Medical Defendants, the Great Meadow Medical Defendants and the Green Haven Medical Defendants are referred to collectively as the "Medical Defendants."  The Court refers to C.O.s Corkery, Havens and Funk as the "C.O. Defendants" and the C.O. Defendants and the

and punitive money damages and injunctive relief in the form of medical treatment and testing. Defendants move pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment in their favor on all of Plaintiff's claims. Plaintiff moves the Court to appoint counsel to represent him in this action. The Court has jurisdiction of the case pursuant to 28 U.S.C. § 1331.

Defendants' motion papers were accompanied by a Statement pursuant to S.D.N.Y. Local Civil Rule 56.1, as well as a Notice to Pro Se Litigant Opposing Motion for Summary Judgment, as required by Local Civil Rule 56.2, and a number of evidentiary submissions, including Plaintiff's medical records. Plaintiff submitted a Memorandum in Opposition to Defendants Motion for Summary Judgment, which included various evidentiary submissions attached as exhibits. The Court notes that, although Plaintiff has not submitted the required response to Defendants' Rule 56.1 Statement and Defendants' factual proffers could, for that reason, be taken as admitted under Local Civil Rule 56.1(c), the Court has examined carefully Plaintiff's memorandum and evidentiary proffers in determining whether there are any genuine issues of material fact. The Court has also considered carefully Defendants' memoranda and accompanying affidavits and exhibits. For the reasons explained below, Defendants' motion for summary judgment is granted.

<u>BACKGROUND</u>

Plaintiff alleges that the Medical Defendants were deliberately indifferent to his serious ongoing medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment and that the C.O. Defendants violated his civil and constitutional rights by using excessive force against him.

---

Medical Defendants are referred to, collectively, as "Defendants."

Facts Pertaining to Medical Issues

The following facts are undisputed.  Plaintiff has been in New York State

Department of Correctional Services (" DOC") custody since 2002.   (Pl's. Dep. at 27.)  The parties

do not dispute that during the period at issue in this case, from 2002 through 2006, Plaintiff was in

custody at Sing Sing Correctional Facility, he was subsequently transferred to Great Meadow

Correctional Facility and later transferred again to Green Haven Correctional Facility.  (Def. 56.1

¶¶ 55-56; Perelli Aff. ¶¶ 7; 39; Paolano Aff. ¶ 6; Bernstein Aff. ¶ 7; see also Schulman Decl., Ex.C

(Pl's Dep.) at 27-28; 36; 40.)[2]  It is undisputed that, during the period of his incarceration from

2002 through 2006, Plaintiff complained of a variety of injuries and symptoms.  An extensive, if

not exhaustive, summary of Plaintiff's ailments and the treatments he received at each correctional

facility follows.

Plaintiff's Medical Complaints

Plaintiff has complained of an injury to his nose and a deviated septum.  (Pl's Dep.

at 118; see also Defs' 56.1 ¶ 18(a).)  Plaintiff testified that his deviated septum makes breathing

more difficult and that he repeatedly wakes in the night attempting to catch his breath.  (Pl's Dep. at

124; see also Defs' 56.1 ¶ 18(a).)  Plaintiff has also complained of a throat injury (Pl's Dep. at 118)

and severe difficulty swallowing (Pl's Dep. at 124; see also Defs' 56.1 ¶ 18(b).)  He states that he

experiences pain when he swallows and feels as if something is loose in his throat or mouth and is

blocking his airway.  (Pl's Dep. at 119-20; see also Defs' 56.1 ¶ 18(b).)  Plaintiff has complained of

pain in his vocal cords and a numbness all around his neck and head.  (Pl's Dep. at 58-59; see also

---

[2]      Plaintiff was transferred back to Sing Sing on July 5, 2007.  (Bernstein Aff. ¶ 42.)
Defendants have represented that Plaintiff is now incarcerated at Attica Correctional
Facility.  (See Docket Entry no. 55.)

Defs' 56.1 ¶ 19.)  Plaintiff has complained of a swollen thyroid and problems with his tonsils and salivary glands leading to dry mouth.  (Pl's Dep. at 58-59.)  Plaintiff has complained of severe pain in his eyes, which causes them to become bloated and watery.  (Pl's Dep. at 120; see also Defs' 56.1 ¶ 18(c).)  According to Plaintiff, this pain becomes worse when he lies down.  (Pl's Dep. at 120.)  Plaintiff has complained of migraine headaches.  (Pl's Dep. at 120-21; Defs' 56.1 ¶ 18(c).)  Plaintiff has complained of abdominal pain and constipation.  (Pl's Dep. at 121; see also Defs' 56.1 ¶ 18(d).)  According to Plaintiff, his stool is often black and blood-streaked.  (Pl's Dep. at 121; see also Defs' 56.1 ¶ 18(d).)  Plaintiff has complained of intestinal gas resulting from an inability to burp.  (Pl's Dep. at 124; see also Defs' 56.1 ¶ 18(d).)  Plaintiff has complained of pale, cold, shrunken testicles and that he believes his testicles are dying because they are not getting enough oxygen.  (Pl's Dep. at 122 -23; see also Defs' 56.1 ¶ 18(e).)  Plaintiff is able to obtain an erection, but is unable to ejaculate.  (Pl's Dep. at 122; see also Defs' 56.1 ¶ 18(e).)  Plaintiff has also complained of weakness, loss of appetite and that he generally is in a "real bad situation of health." (Pl's Dep. at 125; see also Defs' 56.1 ¶ 18(f).)

Plaintiff's complaints as of the time that Defendants' motion for summary judgment was filed included a deviated septum, eye pains, migraine headaches and trouble breathing properly in one nostril.  (Pl's Dep. at 50; see also Defs' 56.1 ¶ 19.)  Plaintiff claims that he experiences daily migraines, which are triggered when he swallows, tastes or licks his lips.  (Pl's Dep. at 51-52; see also Defs' 56.1 ¶ 19.)  Plaintiff also states that licking his lips causes him to experience numbness and tension in his mouth.  (Pl's Dep. at 52.)

Plaintiff complains that his health care providers do not think that his medical problems are as serious as Plaintiff believes them to be.  (Pl's Dep. at 56; see also Defs' 56.1 ¶ 20.) Instead, Plaintiff's health care providers have said that his symptoms are more mental than

physical.  (Pl's Dep. at 56-57.)  According to Plaintiff, Defendants have accused him of making up

his symptoms.  (Pl's Aff. at ¶ 11.)  At the time of Plaintiff's deposition he was taking Respiradol[3]

and Paxil for anxiety and depression.  (Pl's Dep. at 32-33.)

Plaintiff smokes a pack of cigarettes every three days.  (Pl's Dep at. 24-25.)  Plaintiff

acknowledges that the smoking might irritate his throat.  (Pl's Dep. at 133-34.)

Plaintiff's Treatment

*Sing Sing Correctional Facility*

Plaintiff was screened by a nurse for health related issues shortly after arriving at

Sing Sing.  (Perilli Aff. ¶ 7.)  The intake form from that screening indicates that Plaintiff did not

have any health care complaints at that time.  (Perilli Aff. ¶ 7.)  Beginning in September 2002,

Plaintiff complained of and was treated for digestive tract issues.  (Perilli Aff. ¶¶ 9-21; Pl's Aff. ¶

11.)  In response to Plaintiff's complaints of epigastric pain and constipation in the fall of 2002,

Plaintiff was given one or more of the following medications: Maalox, Pepto Bismol, Zantac,

Colace, Pericolace, and Metamucil, and was told to take fluids.  (Perilli Aff. ¶¶ 9; 11; 13; see also

Pl's Aff. ¶ 17 (acknowledging that Medical Defendants have provided Plaintiff with medication for

his gastrointestinal complaints and that this medication has provided some relief, but stating that

the medication was not provided quickly enough).)  Plaintiff was admitted to the Involuntary

Protective Custody/Infirmary ("IPC") for observation in September and November of 2002.  (Perilli

Aff. ¶¶ 10; 14.)

In September 2002, Plaintiff was sent to the St. Agnes Hospital Emergency Room to

---

[3]     The references to "Respiradol" in Plaintiff's deposition transcript (see e.g., Pl's Dep. 10; 33) and "Risperdal" in the Paolano and Bernstein Affidavits (Paolano Aff. ¶ 18; Bernstein Aff. ¶ 41), appear to relate to the same drug.

treat his constipation.  (Perilli Aff. ¶ 10.)  The attending physician recommended stool softener,

fluids and a high fiber diet.  (Perilli Aff. ¶ 10.)  X-rays of Plaintiff's chest and abdominal region did

not reveal any abnormalities, although Plaintiff notes that the x-rays showed that he was

constipated.  (Perilli Aff. ¶¶ 10; 16; 20; Pl's Aff. ¶ 11.)  Repeated physical exams showed no

rebound or point tenderness and showed normal conditions.  (Perilli Aff. ¶¶ 12; 13; 18.)  When

Plaintiff was brought to the emergency room stating that he made himself vomit at least once a day

and the health care provider noted that the site of discomfort changed easily, a member of the

facility psychological services unit was called.  (Perilli Aff. ¶ 12; Pl's Aff. ¶ 11.)

          In November 2002, Plaintiff tested positive for the presence of H. pylori bacteria,

but had no weight loss.  (Perilli Aff. ¶ 13; Pl's Aff. ¶ 12.)  Plaintiff saw a gastrointestinal specialist

in December 2002.  (Perilli Aff. ¶ 15.)   The specialist recommended a stool softener and fiber

supplements, but noted that a follow up should only be scheduled if needed.  (Perilli Aff. ¶ 15.)  In

March 2003, upper GI tests revealed mild reflux and duodenitis.  (Perilli Aff. ¶ 17; Pl's Aff. ¶ 13.)

In May 2003, when Plaintiff was reported as having H. pylori bacteria and losing weight, he was

prescribed Zantac for his indigestion and Ensure as a nutritional supplement to combat the weight

loss reportedly resulting from the H. pylori bacteria.  (Perilli Aff. ¶ 19.)  Plaintiff was again referred

to a gastrointestinal specialist to evaluate Plaintiff's H. pylori and duodenitis.  (Perilli Aff. ¶ 18;

Pl's Aff. ¶ 13.)  The gastrointestinal specialist recommended an esophagogastroduodenoscopy

("EGD") (Pl's Aff. ¶ 13), Prevacid in the morning, Zantac in evening and a high fiber, low fat,

bland diet.  (Perilli Aff. ¶ 21.)  The EGD was subsequently deferred because Plaintiff's symptoms

were improving, (Perilli Aff. ¶ 21) although, as a nurse noted on June 25, 2003, Plaintiff had lost

21 pounds in a little under six months.  (Perilli Aff. ¶ 22.)

          Following Plaintiff's complaints of hip and back pain, x-rays of Plaintiff's abdomen

were taken. (Perilli Aff. ¶ 20.)  Although no abnormalities were evident, the x-rays revealed that

Plaintiff suffered a combination of congential defects and arthritis - Grade I forward listhesis L5

over S1 (displacement forward of the lumbar vertebrae over the sacrum), spondylosis at L5,

degenerative disc change at L5-S1 and occulta Spina Bifida at L5 - that were responsible for a

certain amount of discomfort. (Perilli Aff. ¶ 20; Pl's Aff. ¶¶ 8-9.)  Plaintiff claims that Defendants

have not provided any treatment for these conditions, and suggests that he be given an orthopedic

referral or other specialist referral or therapy or be evaluated for potential surgical procedure.  (Pl's

Aff. ¶¶ 8 -10.)  Defendants' evidence does not indicate that Plaintiff has been provided with any

specific treatment in connection with these orthopedic issues.

Following complaints of testicular pain in July, 2003, Plaintiff's health care provider

was unable to detect any palpable mass or hernia.  (Perilli Aff. ¶ 23.)  X-rays taken on September 5,

2003, following Plaintiff's continued complaints, which had commenced in July 2003, of nasal

discomfort, showed a mucus retention cyst and nasal turbinate engorgement on the left side, which

suggested sinus headaches.  (Perilli Aff. ¶ 27; Pl's Aff. ¶ 6.)  After Plaintiff reported falling down

the stairs in September 2003, cervical x-rays showed no acute abnormalities and Plaintiff was

prescribed Motrin.  (Perilli Aff. ¶ 28.)  Plaintiff was admitted into the IPC for injuries to his neck

and testes sustained during a fall while playing soccer.  (Perilli Aff. ¶ 30; 31.)  X-rays showed no

abnormalities in the cervical spine and no mandible fracture.  (Perilli Aff. ¶ 30.)  Plaintiff was

prescribed Tylenol and Prevacid at the time of his admission and prescribed Prevacid, Cipro and

another drug during a follow-up.  (Perilli Aff. ¶ 30.)  Plaintiff was prescribed glasses in December,

2003.  (Perilli Aff. ¶ 35.)

Plaintiff was repeatedly referred to the facility's psychological service based on his

frequent visits to sick call and a concern that he posed a risk of harm to himself.  (Perilli Aff. ¶¶ 25;

26; 29; 32; 36.)  According to a nurse administrator's review of Plaintiff's medical records, conducted shortly before Plaintiff's December 2003 transfer out of Sing Sing, Plaintiff had had approximately 170 interactions with medical staff in less than two years.  (Pl's Ex. I.)  Plaintiff had been seen 49 times on Sick Call, 27 times on Emergency Sick Call, 36 times by a doctor or PA and sent to an outside hospital twice.  (Pl's Ex. I.)  Plaintiff had been admitted to the infirmary three times, had lab work done eight times and had nine x-rays or radiology appointments.  (Pl's Ex. I.)  He had been seen by the dental department at least four times and had had ENT and Gastroenterology consults.  (Pl's Ex. I.)   Plaintiff's health care providers noted that they believed Plaintiff had psychological, not medical, problems.  (Perilli Aff. ¶ 37.)  One of Plaintiff's providers noted that Plaintiff's frequent reports to sick call with different complaints suggested somatic pain resulting from adjustment problems or depression, but that he would continue to see Plaintiff for the medical complaints.  (Perilli Aff. ¶ 38.)

   It is also undisputed that Dr. Perilli, one of the named Medical Defendants, and the doctor who provided an affidavit in support of Defendants' Motion for Summary Judgment, is no longer employed as Facility Health Services Director at Sing Sing.  (See Pl's Aff. ¶ 22; Defs' Reply Mem. at 6.)  Neither party has proffered admissible evidence as to the reason that Dr. Perilli left his position at Sing Sing.

<em>Great Meadow Correctional Facility</em>

   Following Plaintiff's transfer to Great Meadow, his frequent visits to sick call continued.  (Paolano Aff. ¶ 7.)  Plaintiff was referred to the facility's mental health unit and then admitted to the IPC following complaints of pain in his backside, right leg and head, migraine pain, and inability to get air from his throat to his lungs.  (Paolano Aff. ¶ 8.)  Plaintiff was prescribed an antihistamine and anti-anxiety medicine.  (Paolano Aff. ¶ 8.)  On release from the IPC, Plaintiff

was diagnosed with GERD and anxiety and was prescribed Prevacid. (Paolano Aff. ¶ 9.) Plaintiff continued to complain of constipation and was provided with Colace, fluids and soup. (Paolano Aff. ¶ 10.) Plaintiff received a complete physical in February 2004. (Paolano Aff. ¶ 11.) That same month, he was sent to the Glens Falls Hospital emergency room complaining of severe back and abdominal pain as the result of falling down stairs. (Paolano Aff. ¶ 12.) Head, chest and abdominal CT scans were all negative. (Paolano Aff. ¶ 12.) Plaintiff was diagnosed with contusions, prescribed Tylenol or Advil and, on his return to Great Meadow, held for observation in the IPC. (Paolano Aff. ¶ 12.)

   Plaintiff was referred to Great Meadow's mental health unit for an evaluation of his psychiatric problems to determine if they were consistent with his medical profile. (Paolano Aff. ¶ 13.) A psychiatrist met with Plaintiff and noted that, although Plaintiff had no history of psychiatric illness or treatment prior to incarceration, Plaintiff's complaints had multiplied since his initial complaints of gastrointestinal symptoms. (Paolano Aff. ¶ 14.) According to the psychiatrist, Plaintiff appeared anxious and talked obsessively about his various illnesses, tests and lack of adequate care. (Paolano Aff. ¶ 14.) Plaintiff and the psychiatrist discussed the possibility of Plaintiff's taking an SSRI, a type of antidepressant, but Plaintiff was reluctant and they agreed to reevaluate the possibility in two months. (Paolano Aff. ¶ 14.) Plaintiff repeatedly reported to sick call with stomach pains, although abdominal x-rays revealed no significant abnormalities. (Paolano Aff. ¶¶ 15-16.) Plaintiff was given Pepto-Bismol. (Paolano Aff. ¶ 16.) At one visit, the nurse noted that Plaintiff's weight had dropped and that his tongue was coated black. (Paolano Aff. ¶ 16.) Upper gastrointestinal tests conducted in March 2004 revealed mild reflux without acute esophagitis and possible duodenitis without ulceration. (Paolano Aff. ¶ 17; Pl's Aff. ¶ 14.) As of April 2004, Plaintiff was prescribed Celexa, a brand-name SSRI, and Risperdal, which treats mood

disorders. (Paolano Aff. ¶ 18.) Plaintiff was resistant to psychological testing, which Plaintiff's health care provider believed would be beneficial. (Paolano Aff. ¶ 20.) Plaintiff tested positive for exposure to tuberculosis, although x-rays showed no evidence of the disease. Plaintiff was counseled on the need to take isoniazid to prevent tuberculosis and was prescribed vitamin B6 as a supplement to counteract the B6 depletion resulting from isoniazid. (Paolano Aff. ¶ 21.)

*Green Haven Correctional Facility*

Following Plaintiff's transfer to Green Haven, he continued to complain of chronic constipation, abdominal pain and sore throat. (Bernstein Aff. ¶¶ 7-8.) Although Plaintiff's lungs were clean and his nose and throat appeared normal, Plaintiff was prescribed cough medicine and antibiotics. (Bernstein Aff. ¶ 8.) X-rays showed colon stool retention, but Plaintiff's stool sample was negative for H. pylori. (Bernstein Aff. ¶ 8.) Despite Plaintiff's complaints of infrequent urination, multiple urinalysis tests were negative. (Bernstein Aff. ¶¶ 9; 11.) Doctors were unable to find objective medical evidence for the symptoms Plaintiff complained about on multiple visits in December 2004 and January 2005. (Bernstein Aff. ¶ 10.) Plaintiff complained of a variety of symptoms, including weight loss, at a visit in February 2005. (Bernstein Aff. ¶ 12.) Plaintiff's health care provider conducted a full exam but was unable to find any definite cause for the weight loss. (Bernstein Aff. ¶ 12.) The doctor did note possible duodenitis and stool retention in light of Plaintiff's history of mild reflux and prominent duodenal folds. (Bernstein Aff. ¶ 12.) On the same day, Plaintiff was given Motrin for back pain resulting from playing soccer. (Bernstein Aff. ¶ 13.) Plaintiff was repeatedly sent to the infirmary and discharged when laboratory tests revealed no abnormalities other than stool retention. (Bernstein Aff. ¶¶ 13-14.) Tests conducted included abdominal x-rays, chest x-rays, and abdominal and pelvic CT scans. (Bernstein Aff. ¶ 14.) Although Plaintiff's health care providers continued to see Plaintiff, they indicated an inability to

identify specific physical problems and that Plaintiff appeared to be suffering from a psychological problem. (Bernstein Aff. ¶ 16.)

Plaintiff's stool samples did test positive for chemically detected digested blood. (Bernstein Aff. ¶ 17; Pl's Aff. ¶ 15.) Following Plaintiff's complaint of rectal burning and constipation, Plaintiff's health care provider suspected, but was unable to discover, hemorrhoids. (Bernstein Aff. ¶ 19.) Plaintiff was prescribed a hemorrhoidal cream and, when Plaintiff continued to complain, was referred to a gastroenterologist. (Bernstein Aff. ¶ 19.) The gastroenterologist recommended Anusol, stool softener, fiber supplements, and a colonoscopy. (Bernstein Aff. ¶ 19.) The colonoscopy revealed hemorrhoids, but was otherwise negative. (Bernstein Aff. ¶ 20.) Plaintiff was recommended a high fiber diet, topical steroid suppository and further upper gastrointestinal ("UGI") testing. (Bernstein Aff. ¶ 20.) The UGI testing request was denied by the Regional Medical Director, who is not named as a defendant in this action, as unnecessary in light of the two prior UGI series and an absence of complaints by Plaintiff as to that region at the time of the request. (Bernstein Aff. ¶ 21.)

Following Plaintiff's request to see an eye doctor, Plaintiff's health care provider referred him to an optometrist. (Bernstein Aff. ¶ 22.) Plaintiff's request for referral to a neurologist was denied in light of Plaintiff's failure to present any signs of neurological problems. (Bernstein Aff. ¶ 23.) Plaintiff's health care provider subsequently put in requests for neurology and urology consults when Plaintiff threatened to sue him. (Bernstein Aff. ¶ 23.) Plaintiff saw a genitourinary specialist for complaints of urinary problems and left testicle pain. (Bernstein Aff. ¶ 24.) The specialist found no abnormalities during the exam and the urological findings failed to substantiate Plaintiff's complaint. (Bernstein Aff. ¶ 24.) The specialist refused to do a testicular sonogram and suggested Motrin. (Bernstein Aff. ¶ 24.)

Following complaints that he could not breathe correctly because his throat was not connected, Plaintiff's oxygen saturation was measured to be 99%. (Bernstein Aff. ¶ 26.) Subsequent x-rays of Plaintiff's nose and skull revealed no abnormalities. (Bernstein Aff. ¶ 26.) Plaintiff's neurological exam was normal, but the neurologist suggested a trial of Elavil and a head CT scan. (Bernstein Aff. ¶ 26.) Plaintiff was prescribed Elavil, but was given an MRI instead of CT scan. The results of the MRI were normal. (Bernstein Aff. ¶¶ 26-27.) Plaintiff continued to be prescribed psychotropic medications, which were discontinued for periods during which Plaintiff refused them. (Bernstein Aff. ¶ 28.) In February 2006, a CT scan of Plaintiff's paranasal sinuses revealed only a mild mucosal thickening in the maxillary sinuses and the Plaintiff's deviated septum. (Bernstein Aff. ¶ 30; Pl's Aff. ¶ 6.) An esophogram conducted to evaluate Plaintiff's complaints of swallowing difficulty was negative. (Bernstein Aff. ¶ 31.) Plaintiff saw an otolaryngologist to evaluate his sinus and neck pain and complaints regarding difficulty breathing and swallowing. (Bernstein Aff. ¶ 32.) The otolaryngologist found no sinus infection and the larynoscopy was normal except for posterior lingual edema. (Bernstein Aff. ¶ 32; Pl's Aff. ¶ 18.) Steroidal spray for the deviated septum, a sleep study and Prilosec and a Barium swallow test for the posterior lingual edema were recommended. (Bernstein Aff. ¶ 32; Pl's Aff. ¶ 6.) Although Plaintiff believes that the deviated septum and nasal turbinate engorgement could be surgically corrected, he has not been referred for surgery. (Pl's Aff. ¶ 7.) The swallow test was normal. (Bernstein Aff. ¶ 32.) Plaintiff subsequently participated in a sleep study at Mt. Vernon Hospital, which revealed no abnormalities. (Bernstein Aff. ¶ 35.) Plaintiff continued to meet with health care providers, asserting the same complaints. Plaintiff was encouraged to obtain mental health treatment and take his mental health medications, as the only medical problem his health care providers found were occasional bouts of constipation. (Bernstein Aff. ¶ 33.) Referrals for

endoscopy and a genitourinary consult, made at Plaintiff's insistence, were denied by the Regional Medical Director in light of his previous referrals. (Bernstein Aff. ¶ 36.)

As of the time that the motion for summary judgment was filed, Plaintiff continued to report frequently to sick call and to be monitored by health care providers. (Bernstein Aff. ¶ 38.) His complaints were substantially the same and, according to Defendants, continued to be unsubstantiated by objective medical evidence. (Bernstein Aff. ¶ 38.) It is undisputed that the Medical Defendants failed to make at least some of the referrals to specialists that Plaintiff has requested. (See Pl's Aff. ¶ 9, 18, 19; Bernstein Aff. ¶ 36.) Plaintiff was under the care of the Office of Mental Health ("OHM") on an outpatient basis. (Bernstein Aff. ¶ 39.) As of an October 16, 2006 OHM evaluation, Plaintiff had been diagnosed with Delusional Disorder based on his preoccupation with somatic complaints that have not been substantiated by medical findings. (Bernstein Aff. ¶ 39.) He had previously been diagnosed with Anxiety Disorder NOS (not otherwise specified). (Bernstein Aff. ¶ 39.) As of the time of that evaluation, Plaintiff was refusing to take his mental health medications. (Bernstein Aff. ¶ 39.) According to a December 2006 treatment plan review and Plaintiff's testimony, Plaintiff had resumed his psychiatric medications, Risperdal and Paxil, and Plaintiff was being encouraged to practice coping strategies which reduce the amount of time he spends thinking about medical concerns. (Bernstein Aff. ¶ 40.)

Material Facts Pertaining to Plaintiff's Excessive Force Claim

Plaintiff has also asserted a claim of excessive force against the C.O. Defendants. Plaintiff filed a grievance, numbered GH 57823-05, on November 17, 2005, alleging an assault by staff on September 17, 2005. (Schulman Decl., Ex. D (Inmate Grievance Complaint #GH 57823-05); Defs' 56.1 ¶ 116.) The current action was initiated by Plaintiff's original complaint, which was received by the Pro Se Office of this district on December 9, 2005, less than a month after Plaintiff

filed the grievance alleging an assault by the C.O. Defendants.  (Schulman Decl., Ex. A (Judge

Mukasey's February 15, 2006, Order).)  On January 18, 2006, <u>after</u> the Pro Se Office received

Plaintiff's complaint, Superintendent Ercole denied the grievance.  (Schulman Decl., Ex. D

(Superintendent Ercole Response); Pl's Aff. ¶ 26.)  The parties dispute whether Plaintiff properly

exhausted the administrative process with respect to grievance GH 57823-05 by appealing the

Superintendent's denial of the grievance to the Central Office Review Committee ("CORC").  The

Appeal Statement portion of Defendants' copy of the Superintendent's denial is blank (Schulman

Decl., Ex. D (Superintendent Ercole Response)) and the CORC has no record of an appeal.

(Bellamy Decl. ¶ 5; Bellamy Decl., Ex. A.).  However, Plaintiff produced two Appeal Statements

during discovery that related to grievance GH 57823-05.  (<u>See</u> Schulman Decl. ¶ 6; Ex. E (Appeal

Statements). )  Neither Appeal Statement is signed by the Grievance Clerk and both appeal

statements are dated January 26, 2006.  (<u>Id.</u>)  Plaintiff has included one of the two Appeal

Statements as an exhibit to his Opposition.  (<u>See</u> Pl's Mem. in Opp., Ex. K.)  Plaintiff has not

provided an explanation as to why there are two Appeal Statements for GH 57823-05, nor does

Plaintiff attempt to explain the absence of the Grievance Clerk's signature on the Appeal

Statements.  The absence of the Grievance Clerk's signature is indicative of a failure to exhaust and

Plaintiff's own dating of the Appeal Statements as January 26, 2006, indicates that any possible

appeal would have occurred after Plaintiff initiated this action and prior to any possible exhaustion

of this grievance.  Plaintiff  has not proffered any additional evidence that he exhausted grievance

GH 57823-05, or any reason for his inability to exhaust this grievance through an appeal to CORC.

Plaintiff also mentioned the alleged assault in grievance numbered GH 57908-05.

(Schulman Decl. Ex. F, (Inmate Grievance Complaint GH 57908-05).)  Plaintiff, in his affidavit,

states that the main purpose of that grievance was obtaining necessary medical treatment.  (Pl's Aff.

¶ 28 (stating that, "[w]hile the focus of this grievance was more on getting the medical attention I needed, I did reiterate that I was the victim of an 'unprovoked assault on my person.'").)  Plaintiff filed this grievance after "learning that [GH 57823-05] went to the Superintendent."  (Pl's Aff. ¶ 28.)  Unlike grievance GH 57823-05, grievance GH 57908-05 was initially submitted to the inmate grievance review committee (IGRC) and did not proceed directly to the Superintendent.  (Schulman Decl. Ex. F, (IGRC Determination).)  Plaintiff subsequently appealed the IGRC decision on GH 57908-05 to the Superintendent and, following the Superintendent's decision, to the CORC.  (See Schulman Decl. Ex. F; Defs' 56.1 ¶ 117; Pl's Aff. ¶ 28.)

DISCUSSION

Plaintiff's Request for Appointment of Counsel

As noted above, Plaintiff has requested that the Court appoint counsel to represent him in this action.  The parties' written submissions were sufficiently informative on all of the relevant factual and legal issues that the Court was able to make its determination on review of these submissions.  Because, as explained below, Plaintiff has failed to demonstrate that his claims have legal merit, court appointment of counsel would not be appropriate.  See generally, Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989).  Accordingly, Plaintiff's request for counsel is denied.

Standard of Review

Summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure is to be granted in favor of the moving party when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). However, as the Second Circuit has explained, it is not enough for the party opposing summary judgment to show that "'some metaphysical doubt as to the material facts'" exists. Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must proffer specific facts showing the existence of a genuine issue for trial. Id. "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

Defendants move for summary judgment with respect to Plaintiff's claims against the Medical Defendants on the grounds that Plaintiff's complaints consisted of minor common maladies and were not objectively serious and, additionally, that the repeated tests, referrals and treatments that Plaintiff received are evidence that the Medical Defendants did not act with the deliberate indifference necessary to Plaintiff's claim. The Defendants also move for summary judgment on the grounds that several Defendants had no personal involvement and that the Medical Defendants have qualified immunity. Defendants further argue that Plaintiff has failed to exhaust his remedies against the Green Haven Medical Defendants. Finally, Defendants move for summary judgment on Plaintiff's excessive force claim based on failure to exhaust administrative remedies. Based on the undisputed facts in this case, Defendants have met their burden of showing that no genuine issue of material fact exists as to whether the Sing Sing Medical Defendants and the Great Meadow Medical Defendants were deliberately indifferent as to Plaintiff's medical needs, and as to whether Plaintiff exhausted his administrative remedies as to his claim of excessive force by the C.O. Defendants. Furthermore, although Plaintiff failed to exhaust his administrative remedies against the Green Haven Medical Defendants, those Defendants are entitled to summary judgment

in their favor because all of the Medical Defendants are entitled to qualified immunity.

Defendants' argument regarding personal involvement need not be addressed.

The PLRA

The Prison Litigation Reform Act of 1995 (the "PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (West 2003). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). In Jones v. Bock, 127 S. Ct. 910 (2007), the Supreme Court resolved a Circuit split and held that the existence of some unexhausted claims in an action does not warrant dismissal of the entire action. Id. at 924-925. Thus, even if the Court finds that some of Plaintiff's claims have not been properly exhausted, it will consider the merits of those claims that Plaintiff has exhausted.

Plaintiff's Claims Regarding his Medical Care

Exhaustion

Defendants do not contest that Plaintiff has exhausted his administrative remedies, as required by the PLRA, with regard to his medical care at Sing Sing. (See Def s' 56.1 ¶ 114 (citing grievance SS-38057-03); 119.) Nor do Defendants contest that Plaintiff has properly exhausted his administrative remedies with regard to his medical care at Great Meadow. (See Defs' 56.1 ¶ 115 (citing grievance GM-35650-04); 119.) Defendants do, however, assert that Plaintiff has failed to exhaust his administrative remedies against the Green Haven Medical Defendants and that the claims against those defendants must, therefore, be dismissed.

On November 29, 2005, Plaintiff filed grievance GH-57908-05, alleging that he was receiving inadequate medical attention at the Green Haven facility. (Schulman Decl. Ex. F; Defs' 56.1 ¶ 117; Pl's Aff. ¶ 28.) On December 15, 2005, the grievance committee held that medical determinations are beyond its purview and recommending that Plaintiff receive a second opinion. (Schulman Decl. Ex. F; Defs' 56.1 ¶ 117.) Superintendent Ercole denied Plaintiff's appeal on December 20, 2005. (Schulman Decl. Ex. F; Defs' 56.1 ¶ 117.) On January 18, 2006, the CORC accepted the grievance only to the extent of upholding the Superintendent's determination. (Schulman Decl. Ex. F; Defs' 56.1 ¶ 117; Pl's Aff. ¶ 28.) Thus, according to the undisputed facts, grievance GH-57908-05 was exhausted on January 18, 2006. Although Plaintiff contends that he filed additional grievances at Green Haven, Pl's Aff. ¶ 23(c), he has failed to provide any evidence that he exhausted the appeal process for those grievances prior to commencing this action.

Plaintiff's original complaint was received by the Pro Se Office of this District on December 9, 2005. (See Defs' 56.1 ¶ 119; Schulman Decl. Ex. A, p.5 (Judge Mukasey's February 15, 2006, Order).) The Second Circuit has held that, "where required, grievances must . . . be fully pursued prior to filing a complaint in federal court." Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001), overruled on other grounds by Porter v. Nussle, 534 U.S. 516 (2002). "Subsequent exhaustion after suit is filed therefore is insufficient." Id. Allowing inmate-plaintiffs to file or proceed with lawsuits before exhausting administrative remedies would undermine the policy concerns underlying Section 1997e(a). Id. However, because the Court finds that all of the Medical Defendants are entitled to qualified immunity, as addressed in more detail below, summary judgment in Defendants' favor on Plaintiff's claims against the Green Haven Medical Defendants, instead of dismissal without prejudice for failure to properly exhaust, is warranted.

The Court first addresses Plaintiff's claims based on deliberate indifference.

Plaintiff alleges that Defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment by demonstrating deliberate indifference to his medical needs. The Eighth Amendment's prohibition on the infliction of cruel and unusual punishments "includes punishments that 'involve the unnecessary and wanton infliction of pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). It is well established that deliberate indifference to a prisoner's serious medical needs constitutes the very type of unnecessary and wanton infliction of cruel and unusual punishment that is prohibited by the Eighth Amendment and is a basis for Section 1983 recovery. Estelle v. Gamble, 429 U.S. 97, 104-5 (1976). The deliberate indifference standard is a two-pronged test; it embodies both an objective and a subjective element. Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' Second, the charged official must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (internal citations omitted). A charged official does not act with a sufficiently culpable state of mind to satisfy the subjective prong unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

*Objective Prong*

A medical need is "sufficiently serious" so as to satisfy the objective prong of the deliberate indifference standard when it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "Because the objective component of an Eighth Amendment claim is necessarily contextual and

fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotations and citations omitted). The Second Circuit has identified non-exclusive factors that are highly relevant to the "sufficiently serious" inquiry: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted). A medical need is also considered sufficiently serious under the objective prong where denial of treatment causes a permanent loss or life-long handicap. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

Plaintiff has raised a genuine issue of material fact as to whether he suffered from a sufficiently serious medical need. According to the undisputed facts, Plaintiff's complaints include a nose injury and deviated septum; throat injury and painful swallowing; numbness in his neck and head and painful vocal cords; swollen thyroid and dry mouth; painful eyes; headaches; abdominal pain and constipation; intestinal gas; pale, shrunken testicles and an inability to ejaculate; weakness and loss of appetite. Plaintiff has been diagnosed with a degenerative disc condition and spondylosis, which Defendants admit cause a "certain degree of discomfort," and Plaintiff complains cause him pain. Courts in this circuit disagree as to whether the injuries and symptoms Plaintiff experiences constitute a sufficiently serious medical need. Compare Veloz v. New York, 339 F. Supp. 2d 505, 522-26 (S.D.N.Y. 2004) (where Plaintiff had mild to moderate degenerative spondylosis, but there was no indication that his condition was so serious that it could have produced "death, degeneration, or extreme pain," Plaintiff's "back pain was a chronic condition that did require attention, but was not a 'condition of urgency' sufficient to establish a serious medical need) and Harris v. Morton, 2008 WL 596891 (N.D.N.Y. 2008) ("Degenerative Disk

Disease itself might be considered a constitutionally significant injury."); compare  Ross v.

McGinnis, No. 00-CV-0275,  2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) ("Plaintiff's

complaints of abdominal pain, vomiting, heartburn, constipation, body odor and extreme body heat

did not constitute a serious medical need.") and Moriarity v. Neubould, No. 02CV1662, 2004 WL

288807, at *2 n. 2 (D. Conn. Feb. 10, 2004) (suggesting that plaintiff's migraine headaches, which

could be "extremely painful and debilitating" constituted a sufficiently serious medical condition

under the Eighth Amendment).

It is undisputed that Plaintiff has repeatedly complained of extreme pain and arrived

at medical facilities in apparent pain.  Although Defendants' evidence tends to show that much of

Plaintiff's pain may be the result of mental, rather than physical, issues and, although isolated

instances of the alleged ailments and symptoms Plaintiff experienced might not rise to the level of a

sufficiently serious medical need, a reasonable fact finder drawing all inferences in favor of the

Plaintiff could find in his favor as to the existence of a sufficiently serious medical need with

respect to at least some of the complaints.  The Medical Defendants are nonetheless entitled to

summary judgment as a matter of law because the Plaintiff has failed to come forward with

evidence sufficient to carry his burden as to the subjective prong of the deliberate indifference

standard.

*Subjective Prong*

The undisputed evidence shows that the Medical Defendants did not act with the

necessary culpable state of mind.  The state of mind required to satisfy the subjective prong of the

deliberate indifference standard is "more than negligence, but less than conduct undertaken for the

very purpose of causing harm."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  "Mere

negligence in the treatment of an individual's physical condition, or claims based on differences of

opinions over matters of medical judgment, fail to rise to the level of a § 1983 violation." Sloan v. Zelker, 362 F. Supp. 83, 84 (S.D.N.Y. 1973). "More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety.'" Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The requisite state of mind is one "equivalent to the familiar standard of 'recklessness' as used in criminal law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).

There is no evidence that the Medical Defendants knew of and disregarded an "excessive risk" to Plaintiff's health. The undisputed facts show that the Medical Defendants were anything but reckless in their evaluation and treatment of Plaintiff. Plaintiff was frequently examined, tested and treated for his various ailments. He has been seen by medical personnel on numerous occasions at the different facilities in which he has been incarcerated. He has been admitted to the infirmary on multiple occasions and sent to an outside hospital at least twice. (See e.g., Pl's Ex. I.) He has been referred to and seen by various specialists, including a gastrointestinal specialist, a gastroenterologist, a genitourinary specialist, and a neurologist. (Perilli Aff. ¶ 18; 21; Bernstein Aff. ¶¶ 19; 24; 26.) Plaintiff has also been seen multiple times by the dental department. (See e.g., Pl's Ex. I.) He has had frequent x-rays, extensive labwork, multiple CT scans and an MRI. (See e.g., Pl's Ex. I; Perilli Aff. ¶¶ 10; 16; 20; Bernstein Aff. ¶¶ 26-27.) Plaintiff has been given a variety of over-the-counter and prescription drugs in an attempt to alleviate his symptoms, physical and mental. Defendants have referred Plaintiff to psychological services on numerous occasions. The Defendants' evidence, which is undisputed from the medical perspective, indicates that the lack of success in alleviating Plaintiff's complaints stems not from a lack of trying or a lack of concern as to whether Plaintiff suffers from serious medical conditions, but from an inability to

isolate the root causes of specific complaints and analyses leading to conclusions that many of Plaintiff's complaints are related to his mental and not his physical health.

A January 26, 2004, letter written by a Dr. Patria Gonzalez, who had reviewed Plaintiff's medical records at an attorney's request, and which Plaintiff relies on in his affidavit as a basis for believing that his medical complaints are physical and not mental, recommends four tests: an endoscopic evaluation, a swallowing test, an MRI of the neck and a psychiatric evaluation. (See Pl's Aff. ¶ 21; Pl's Ex. J, (Gonzalez letter).) Plaintiff has received three of the four recommended tests. (See Bernstein Aff. ¶ 32 (Barium swallow test was normal); Pl's Dep. p. 49 (Plaintiff stating that "I get MRI last year only in my neck."); see e.g., Perilli Aff. ¶¶ 25; 26; 32; 36 (Plaintiff referred to psychological services); see also Paolano Aff. ¶¶ 13 - 14 (Plaintiff met with psychiatrist at Great Meadow Office of Mental Health and discussed possible anti-depressants).) Additionally, an EGD had been recommended (Pl's Aff. ¶ 13), and Defendants have put forth evidence that the reason the EGD was deferred was because of improvement in Plaintiff's condition. (See Perilli Aff. ¶ 21.) Thus, the undisputed facts show that the Medical Defendants have considered all and conducted most of the tests that Plaintiff's own medical consultant recommends.

Plaintiff argues that he should have seen additional specialists, been provided additional tests and tested earlier, been provided surgical consults for his complaints, and that he should have been provided surgery for, at a minimum, his deviated septum. However, courts have repeatedly held that the failure to order certain medical tests or to refer a prisoner to specialists does not rise to the level of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); Sonds v. St. Barnabas

<u>Hosp. Correctional Health Services,</u>151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."); <u>Fulmore v. Mamis</u>, No. 00 Civ. 2831, 2001 WL 417119, at *9 (S.D.N.Y. Apr. 23, 2001) ("[C]ourts have repeatedly dismissed claims, such as Fulmore's, that prison doctors ordered x-rays but not cat scans, or refused asthma inhalers, while providing other treatment to the inmate plaintiff.") (collecting cases).

Plaintiff's claims of constitutional violations are based on his disagreement with medical professionals as to his preferred treatment. He has not provided any evidence that the Medical Defendants' failure to provide Plaintiff with the specific medical referrals and procedures that he has requested constitute recklessness on their part. Nor has Plaintiff provided evidentiary support for his conclusory statements that he is a good candidate for surgery, that additional specialists referrals were warranted or that the various tests performed and treatments prescribed did not constitute adequate treatment. "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998). Plaintiff has been provided extensive access to medical personnel and treatments. "[S]ociety does not expect that prisoners will have unqualified access to health care," <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992), and, thus, absent a showing that the Medical Defendants were reckless in disregarding a risk to Plaintiff's health, Plaintiff's complaints that he has not received the exact tests, referrals and treatments that he wanted, at the desired time, are insufficient to raise a triable question of fact as to whether the medical defendants were deliberately indifferent to serious medical needs.

Nor does Plaintiff's claim that Dr. Perelli's credibility must be questioned in light of the fact that he is no longer employed in his position as Facility Health Services Director at Sing Sing Correctional Facility raise genuine issues of material fact. Although Defendants have not submitted evidence regarding an employment dispute between DOCS and Dr. Perilli, <u>see</u> Defs.' Reply Mem. at 6, there is no suggestion in any of Plaintiff's evidence that the termination of Dr. Perilli's employment was related to his treatment of Plaintiff or that Dr. Perilli's treatment of or testimony regarding Plaintiff's medical conditions was inconsistent with the medical evaluations, treatments and testimony offered by the other medical defendants. "[I]t is not sufficient for a party opposing summary judgment to argue in conclusory fashion that the movant's witnesses are not credible." <u>Hester v. Rich</u>, No. 03 Civ. 5714 2004 WL 2049271, at *2 (S.D.N.Y. 2004). Plaintiff has offered no concrete, admissible evidence that Perilli or any of the individuals about whose conduct Perilli testified, were deliberately indifferent to Plaintiff's serious medical needs and Plaintiff's assertions regarding jailhouse gossip do not satisfy Plaintiff's burden of showing the existence of a genuine issue of material fact.

In light of the undisputed facts evidencing extensive examination and treatment of Plaintiff's various complaints, Plaintiff has failed to raise any genuine issue of material fact as to a sufficiently culpable state of mind on the part of the Medical Defendants. Summary judgment in Defendants' favor as to Plaintiff's medical complaints against the Sing Sing and Great Meadow Medical Defendants is granted and the Court need not address Defendants' arguments about personal involvement and the authority of the specific Defendants with respect to these claims.

<u>Qualified Immunity</u>

The Medical Defendants are entitled to qualified immunity. Qualified immunity "shields government officials performing discretionary functions 'from liability for civil damages'

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Zellner v. Summerlin</u>, 494 F.3d 344, 367 (2d Cir. 2007) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, (1982)).  In determining whether an officer is entitled to qualified immunity, courts must resolve the question of whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  This is the "threshold inquiry" in evaluating a qualified immunity defense and only if the Court finds a constitutional violation will the Court proceed to evaluate the other aspects of the defense.  <u>Scott v. Harris</u>, ___ U.S. ___, 127 S.Ct. 1769, 1774 (2007).

_____As evidenced above in the analysis of Plaintiff's Eighth Amendment claim based on deliberate indifference, the undisputed material facts show that the conduct of the Medical Defendants did not violate any constitutional right of the Plaintiff.  Therefore, the Medical Defendants are entitled to dismissal of all of Plaintiff's medical treatment claims based on qualified immunity as well as on the merits with respect to Plaintiff's exhausted medical treatment claims.

<u>Plaintiff's Claims Regarding Excessive Force</u>

_____<u>Exhaustion</u>

Defendants contend that Plaintiff's excessive force claim must be dismissed because Plaintiff failed to exhaust available administrative remedies.  Plaintiff filed grievance GH 57823-05, relating to C.O. Defendants' alleged use of excessive force, on November 17, 2005.  (Schulman Decl., Ex. D (Inmate Grievance Complaint GH 57823-05); Defs' 56.1 ¶ 116.)  On January 18, 2006, Superintendent Ercole denied the grievance.  (Schulman Decl., Ex. D (Superintendent Ercole Response); Pl's Aff. ¶ 26.)  For the reasons previously stated in connection with the Court's analysis of Plaintiff's claims against the Green Haven Medical Defendants, Plaintiff's claims

against the C.O. Defendants must be dismissed for failure to exhaust <u>prior</u> to bringing this action.[4]

<u>See</u> <u>Neal</u>, 267 F.3d at 122. Neither does Plaintiff's contention that he exhausted his administrative remedies with regard to grievance numbered GH 57908-05, raise a genuine issue of material fact. The purpose of grievance GH 57908-05 was to obtain medical treatment, Pl's Aff. ¶ 28, and even if the grievance did encompass Plaintiff's complaints regarding excessive force, as indicated in the discussion above, the administrative process was not exhausted until well after Plaintiff instituted this action. As Plaintiff has failed to raise any genuine issue of material fact as to whether he exhausted his administrative remedies against the C.O. Defendants prior to filing this suit, summary judgment dismissing the claims against the C.O. Defendants, without prejudice to renewal, is warranted.

CONCLUSION

For the foregoing reasons, Plaintiff's request for appointment of counsel is denied, Defendants' motion for summary judgment is granted on the merits as to Plaintiff's claims against the Sing Sing Medical Defendants, (Defendants Fischer, Perilli, and Maw), and the Great Meadow Medical Defendants, (Defendants Duncan and Paolano). The motion is also granted with respect to Plaintiffs claims against all of the Medical Defendants, (Defendants Ercole, Bernstein, Chakravorty, Hernandez-Valdez, Tardio and Hendrickson, as well as the Sing Sing Medical Defendants and Great Meadow Medical Defendants identified in the preceding sentence), on the grounds of qualified immunity. Plaintiff's claims against the C.O. Defendants, (Defendants Corkery, Havens and Funk), are dismissed, without prejudice, for failure to exhaust administrative remedies.

Plaintiff's claims against Defendants Denise, Morlas, Nunez, Patebl and Phillips are

---

[4] Defendants have not argued, nor have they proffered any evidence in support of an argument, that the C.O. Defendants are entitled to qualified immunity.

dismissed without prejudice for failure to timely serve those Defendants. Plaintiff's claims against "Mental Staff Sing Sing" and "Mentasl [sic] Staff: Great Meadow" are dismissed without prejudice to the extent he intended to bring those claims against anyone other than the Medical and C.O. Defendants (see note 1, supra).

The Clerk of Court is respectfully requested to enter judgment accordingly and close this case. This opinion resolves Docket Entry no. 36.

SO ORDERED.

Dated: New York, New York
September 30, 2008

LAURA TAYLOR SWAIN
United States District Judge